# EXHIBIT A

Kane County Circuit Court    THOMAS M. HARTWELL    ACCEPTED: 2/7/2018 8:49 AM    By: HF    Env #496577

IN THE CIRCUIT COURT OF KANE COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION  18-L-000075

LUCILA TORRIJOS                          )
                                         )
            Plaintiff,                   )
                                         )
v.                                       )          No.
                                         )
INTERNATIONAL PAPER COMPANY.;            )
INTERNATIONAL PAPER, INC;                )
TECASA INDUSTRIES USA, INC.             )
                                         )
            Defendants                   )
                                         )
And                                      )
                                         )
CANO CONTAINER CORP.;                    )
MANPOWER INC.                            )
                                         )
            *Respondents in Discovery*   )

> *Thomas M. Hartwell*
> Clerk of the Circuit Court
> Kane County, Illinois
>
> 2/2/2018 1:49 PM
>
> FILED/IMAGED

JURY TRIAL DEMANDED

## COMPLAINT AT LAW

NOW COMES PLAINTIFF LUCILA TORRIJOS, through her attorneys Grasso Bass, PC,

and in her Complaint at Law against Defendants INTERNATIONAL PAPER, INC and TECASA

INDUSTRIES USA, INC. states as follows:

### Parties

1. Lucila Torrijos is a resident of the state of Illinois, with her domicile being located at...

2. International Paper Company is a paper and packaging company incorporated in the state

   of Tennessee that regularly does business in Kane County, IL.

3. International Paper, Inc, is a subsidiary of International Paper Company and also involved

   in the paper and packaging business. International Paper, Inc regularly does business in the

   Kane County IL. International Paper, Inc. Owns and operates a plant in Aurora, IL (herein

   the "Aurora Plaint").    **NOTICE**
   **BY ORDER OF THE COURT THIS CASE IS HEREBY SET FOR**
   **CASE MANAGEMENT CONFERENCE ON THE DATE BELOW.**
   **FAILURE TO APPEAR MAY RESULT IN THE CASE BEING**
   **DISMISSED OR AN ORDER OF DEFAULT BEING ENTERED.**
   **Judge: Clancy Boles, Susan**
   **4/24/2018 9:00 AM**

4. Tecasa Industries USA is a business incorporated in the state of Maryland that designs and manufactures machines used in the production of corrugated boxes.

5. Cano Container Corporation is a packaging company incorporated in the state of Illinois, with a principal place of business located at 3920 Enterprise Court, Aurora, IL 60504. International Paper, Inc. purchased the Aurora Plant and machinery therein, including the flexo-folder-gluer machine at issue in this complaint, from Cano Container Corporation on or about September 9, 2014.

6. ManPower Group, is a company Headquartered in Milwaukee, WI, which, through its brand Manpower provides staffing of its employees to its clients. Manpower has an office of business located at 525 W Monroe St #1500, Chicago, IL 60661 and regularly does business in Kane County, Illinois. Ms. Torrijos was employed by ManPower at the time she was injured at the Aurora Plant.

### FACTS COMMON TO ALL COUNTS

7. On or about January 15, 2016, Plaintiff was hired as a temporary employee at ManPower.

8. On or about January 28, 2016, ManPower contracted with International Paper to have Plaintiff work at the Aurora Plant as an equipment operator, under the supervision of International Paper, Inc, specifically Javier Cano. **Exhibit A**

9. Plaintiff was solely the employee of ManPower. Upon information and belief, per the terms of the contract between ManPower and International Paper, Inc., ManPower indemnified International Paper from any liability as an employer arising out of Plaintiffs working in the Aurora Plant.

10. On or about January 28, 2016 Plaintiff began working at the Aurora Plant.

2

11. At all times Plaintiff was under the control of and instructed by ManPower to follow all safety regulations of International Paper, Inc. while working in the Aurora Plant. Plaintiff did so follow all safety regulations of International Paper always.

12. On February 8, 2016 at approximately 7:00 am Plaintiff was working in the Aurora Plant as a flexo-folder-gluer machine operator on a Tecasa flexo-folder-gluer machine (herein "Machine") owned by International Paper, Inc, feeding sheet cardboard into the feed section of the Machine.

13. There was a machine operator on the opposite end of the Machine.

14. Supervisors at International Paper had instructed Plaintiff that at all times she must be doing something and to never be idle.

15. Plaintiff was wearing rubberized cut-resistant work gloves as required by International Paper and following all instructions as they had been given to her by International Paper, Inc.

16. Upon information and belief, The Machine operator on the opposite end of the Machine informed the Plaintiff of a problem with production and he was stopping the machine to investigate it at the other end of the line.

17. While the machine was stopped, Plaintiff stepped down to the left of the center feed station area, picked up a paper towel supplied in the work area near the Machine and began to wipe dust from the edge of the Machine table, inches from the Machine's fixed barrier guard in front of the feed rollers to the left of the center feed section of the Machine. Plaintiff began to wipe the dust from the Edge of the Machine table to keep busy and not be idle while the Machine was stopped.

3

18. There was an opening beneath the front barrier guard which was not in accordance with U.S. Department of Occupational Safety and Health Administration's (herein "OSHA") .217 Table O-10. The opening beneath the front barrier guard was large enough that Plaintiff's hand could fit under it. Behind the front barrier guard of the Machine was the ingoing nip-point between the feed rolls.

19. The Machine, specifically the opening beneath the front guard barrier to the left of the center feeding station was not in accordance with safety regulations.

20. It was International Paper, Inc's responsibility to maintain the Machine in accordance with safety guidelines, including the guidelines set by OSHA's .217 table O-10.

21. It was Tecasa, USA's responsibility to design and manufacture the Machine in accordance with all safety regulations, including OSHA's .217 table O-10.

22. Upon information and belief Tecasa USA did not design and/or manufacture the Machine in accordance with all safety regulations, including OSHA's .217 table O-10

23. While Plaintiff was wiping dust of the Machine table the Machine restarted.

24. Plaintiffs right hand was pulled under the front barrier guard to the left of the center feed station and into the nip-point between the feed rollers. Plaintiffs right hand was pulled between the rollers almost to her wrist, crushing her fingers and hand.

25. There was no guard in place between the front barrier guard and the rollers to prevent Plaintiff's hand from being pulled between the rollers.

26. Plaintiff eventually was able to hit the emergency stop button on the Machine, but was not able to remove her crushed hand from between the feed rollers.

27. An employee of International Paper walking by saw the situation and notified others. The maintenance technician for the Aurora Plant responded and 911 was called.

4

28. The Fire Department and paramedics arrived while Plaintiffs hand was still caught in the Machine. Due to Plaintiffs position directly in front of the front barrier guard, the machine could not be disassembled in an amount of time quick enough to prevent further serious and life-threatening injuries to Plaintiff. The Fire Department attempted to use a hydraulic jaw-like tool to force the front barrier guard up to be able to remove Plaintiffs hand, and the feed rollers were not designed to work in reverse, so Plaintiff's hand could not be "rolled out" of the rollers as it had been sucked into them.

29. Eventually paramedics extricated Plaintiffs hand as directed by a trauma surgeon at Good Samaritan Hospital who was providing guidance by phone.

30. After Plaintiff's hand was finally removed Plaintiff was flown by helicopter to Good Samaritan Hospital in Downers Grove, IL, a trauma center.

31. Plaintiff sustained severe crushing and degloving injuries to the right hand and fingers and had to undergo multiple surgeries. The incident resulted in permanent injury and severe disfigurement of her right hand.

32. Subsequent to the incident the OSHA conducted interviews, investigated the Plant and Machine and prepared a written report of their findings. **Exhibit B.**

<u>**COUNT I – Negligence against Defendant International Paper, Inc.**</u>

33. Plaintiff herein realleges paragraphs 1-32.

34. International Paper had a duty to those in the Aurora Plant, including to Plaintiff, to maintain the Machine according to safety regulations.

35. International Paper, Inc breached its duty by failing to

   a) Maintain the Machine within OSHA guidelines in .217 table O-10.

   b) Safely maintain the machine.

36. But for International Paper, Inc's failures the opening beneath the front barrier guard to the left of the center feed station would not have been large enough for Plaintiffs had to get pulled into the nip-point between the rollers of the Machine, and Plaintiff would not have suffered her injuries.

37. Plaintiffs' injuries were proximately caused by International Paper, Inc's negligence.

38. Plaintiffs' injuries have caused her to suffer extensive, permanent, and irreparable damages and disfigurement, including the complete loss of the use of her right hand and arm. Plaintiff's dominant hand was her right hand.

39. Additionally, Plaintiff has suffered and continues to suffer severe emotional distress and psychological trauma as a result of the incident and her injuries.

40. Additionally, Plaintiff has and will continue to suffer economic damages from the loss of use of her right hand, as she can no longer be employed in any job where the use of her right hand is needed.

41. Plaintiffs damages exceed $100,000

WHEREFORE, Plaintiff requests this Court enter judgment in her favor against International Paper in an amount exceeding $100,000.

## COUNT II - Products Liability against Defendant Tecasa USA

42. Plaintiff herein realleges paragraphs 1-33.

43. Plaintiff was at all relevant times using the Machine as it was intended to be used.

44. Tecasa USA had a duty to design and manufacture the Machine in accordance with all safety regulations, including OSHA .217 table O-10

45. Tecasa designed the Machine without a guard in front of the rollers to the left of the feed station, which allowed Plaintiffs hand to get pulled between the rollers and injured.

6

46. Upon information and belief Tecasa manufactured the Machine such that the front-barrier guard to the left of the center feed station had an opening beneath it large enough for Plaintiffs had to be pulled through, and not in accordance with OSHA .217 table O-10. Defendant could have reasonably manufactured the Machine in accordance with safety standards.

47. But for Tecasa's negligence in designing and manufacturing the Machine Plaintiff's hand would not have been pulled between the rollers and she would not have.

48. Plaintiffs injuries were proximately caused by Tecasa, USA's negligence.

49. Plaintiffs injuries have caused her to suffer extensive, permanent, and irreparable damages and the loss of the use of her right hand and arm.

50. Additionally, Plaintiff has suffered severe emotional distress and psychological trauma as a result of the incident and her injuries.

51. Additionally, Plaintiff has and will continue to suffer economic damages from the loss of use of her right hand, as she can no longer be employed in any job where the use of her right hand is needed.

52. Plaintiffs damages exceed $100,000

WHEREFORE, Plaintiff requests this Court enter judgment in her favor against International Paper in an amount exceeding $100,000.

## COUNT III – Respondents In Discovery

53. Plaintiff herein realleges paragraphs 1-32.

54. The plaintiff believes that CANO CONTAINER CORP and MANPOWER have information essential to the determination of who properly should be named as additional

7

defendants in the action and, accordingly, names them as respondents in discovery pursuant to the provisions of 735 ILCS 5/2-402.

WHEREFORE, plaintiff prays that CANO CONTAINER CORP and MANPOWER be respondents in discovery in this action pursuant to the provisions of 735 ILCS 5/2-402.

Respectfully submitted,

s/Anthony Bass
Anthony Bass
For Plaintiff

Anthony Bass
Grasso Bass, PC
38 Blaine St, Ste 100
Hinsdale, IL 60521
630-654-4500
Abb123@ameritech.net

8

# Exhibit A

**From:** la flakis t [mailto:flakis042083@hotmail.com]

**Sent:** Wednesday, January 20, 2016 1:04 PM

**To:** Sanchez, Karinna
**Subject:** Re: Manpower -- International Paper interview info for 1/21

Thank you Karina. I will be there on time.

Sent from my iPhone

On Jan 20, 2016, at 12:50 PM, Sanchez, Karinna <karinna.sanchez@manpower.com> wrote:

Hi Lucy,

Congratulations on your interview with International Paper! International Paper -- Aurora Sheet location is located at 3920 Enterprise Court in Aurora, IL 60504. **You are confirmed to interview on Thursday, 1/21 at 9am.** Please ask for Hannah Meyer.

Responsibilities include performing general labor and eventually operating machines that produce corrugated paper products used for packing purposes. You'll also be responsible for additional production duties as needed. Hours for the position are Monday -- Friday: 7am to 3:30pm plus OT as needed. Starting pay is $14.50/hour.

Please let me know if you have any questions and good luck!

Thank you,

**Karinna Sanchez**
Staffing Specialist Team Lead

**Manpower**

1415 Corporate Blvd.
Aurora, Illinois 60502

<image001.jpg>

T: <u>+1 630 898 2990</u>

F: <u>+1 630 898 9675</u>

**From:** "Sanchez, Karinna" <karinna.sanchez@manpower.com>
**Date:** January 25, 2016 at 4:25:57 PM CST
**To:** "FLAKIS042083@HOTMAIL.COM" <FLAKIS042083@HOTMAIL.COM>
**Subject: Manpower -- International Paper assignment info for 1/28**

Hi Lucy,

You are confirmed to start at International Paper on Thursday, January 28th at 7am. Please see below for your assignment information and you will receive an email after you start with your IQ Navigator information (website that you will be entering your hours worked).

Please review the information and let me know if you have any questions or concerns. Best of luck!

TEMPORARY ASSIGNMENT INFORMATION SHEET

| Date | 01/25/2016 |
|---|---|
| Employee Name | Lucila Torrijas Gonzalez |
| Order Number | **Please enter your hours through IQN** |

## Position Information

| Department | Equipment Operator |
|---|---|
| Shift/Working Hours | **Monday -- Friday: 7am to 3:30pm plus OT** |
| Nature of Work/Job Description | Set-Up or Operate machinery that perform a variety of functions such as converting, sawing, corrugating, banding, wrapping, boxing, stitching, forming, or sealing paper or paperboard sheets into products. |
| Start Date/Time of Position | **Thursday January 28th at 7am** |
| Dress Code/Requirements | **Casual, steel toed boots are required** |
| Report to/Supervisor Name | Javier Cano |
| Hourly Pay Rate | $14.50 an hour |
| Lunch Break/Facilities | Please ask for supervisor |

\* The availability of an assignment through Manpower is subject to client needs.

## Client Company Information

| Name of Client Company | **International Paper -- Aurora Sheet** |
|---|---|
| | 3920 Enterprise Ct. Aurora, IL 60504 |

## Additional Assignment Information

**Unless otherwise notified:**
• ☐☐☐☐☐☐☐☐☐☐You will be responsible for your own transportation to the client company site.
• ☐☐☐☐☐☐☐☐☐☐You will be responsible for supplying your own meal while working at the client company site.
• ☐☐☐☐☐☐☐☐☐☐You will not be responsible for supplying your own safety equipment.


Thank you,
**Karinna Sanchez**
Staffing Specialist Team Lead

**Manpower**
1415 Corporate Blvd.
Aurora, Illinois 60502


T: +1 630 898 2990
F: +1 630 898 9675

karinna.sanchez@manpower.com




karinna.sanchez@manpower.com



<image002.gif><image002.gif>

# Exhibit B

 

# U.S. Department of Labor - Occupational Safety and Health Administration

## Inspection Report
Fri Aug 05, 2016 21:26:37 PM

| RJD | CSHO ID | Supervisor ID | Inspection Number | Optional Report Number | Case Closed Date |
|---|---|---|---|---|---|
| 0521400 | # 7C | A 7C | 1124627 | 16-10-463 | |

| Establishment Name | | International Paper Company | Doing Business As (DBA) | | |
|---|---|---|---|---|---|
| Establishment Owner Name | Private Sector | | Type of Business | Corporation | |
| | | | | Primary NAICS | 322299 |
| Site Address | 3920 Enterprise Ct. AURORA, IL, 60504 | | Site Phone | (630)-423-9790 | Extn | | Site FAX | (901)-473-5292 |
| Business Address | 3920 Enterprise Ct. AURORA, IL, 60504 | | Business Phone | (630)-423-9790 | | Business FAX | 901-473-5292 |
| Mailing Address | 3920 Enterprise Ct. AURORA, IL, 60504 | | E-mail | | | Mobile Phone | |
| Site Activity | Corrugated box mfg | | NAICS Inspected | 322299 | | Days on Site | 2 |
| Federal EIN | # 4 | | DUNs | 001316561 | Temporary or Fixed Site? | | Fixed Site |
| State Estab Id | | | DUNS plus4 | | CAGE Code | | 1F4B7 |

| Entry | 11-FEB-2016 | 11:00 AM | First Closing Conference | 01-AUG-2016 | 10:00 AM |
|---|---|---|---|---|---|
| Opening Conference | 11-FEB-2016 | 11:10 AM | Second Closing Conference | | |
| Walkaround | 11-FEB-2016 | 12:00 PM | Exit | 24-JUN-2016 | 04:00 PM |

| Inspection Initiating Type | Referral-Employer Reported | | Secondary Type | |
|---|---|---|---|---|
| Other Initiating Type | | | Inspection Category | Safety |
| Scope of Inspection | Partial | | Reason No Inspection | |
| Sampling Performed? | N | SVEP | N | Expln. for No Insp. | |
| Federal Strategic Initiatives | AMPUTATIONS | | | |
| National Emphasis | | | | |
| Local Emphasis | | | | |
| Primary Emphasis | | | | |

| Employed in Establishment | 17 | Walkaround? | Y | Advance Notice? | N |
|---|---|---|---|---|---|
| Covered By Inspection | 3 | Interviewed? | Y | Flag for Follow-up | N |
| Controlled By Employer | 20000 | Union? | N | Reason for Follow-up | |
| Is this Company a current federal contractor? | Y | Attempt made to capture Exec Order Info? | | Y |

| Parent Company Legal Name | | Parent Comp Trade Name/DBA | | |
|---|---|---|---|---|
| Parent Company Address | | Phone Number | | Extn | |
| TIN / EIN | | DUNS | | |
| CAGE Code | | DUNS plus4 | | |

 

Page 2
International Paper Company

Fri Aug 05, 2016 21:26:37 PM
Inspection Nr. 1124627

| Related Activity | | | |
|---|---|---|---|
| Activity Number | Activity Type | Satisfied | Establishment Name |
| 1060770 | Referral | Safety | International Paper Company |

| Related Inspections | | |
|---|---|---|
| Inspection Number | Establishment Name | Related Inspection Type |
| | | |

| Additional Codes | | | |
|---|---|---|---|
| Type | ID | Value | Description |
| | | | |

| Employer Representatives Contacted | | | | | |
|---|---|---|---|---|---|
| Name | Brian Totzke | Job Title | Safety Coord (hourly | Occupation | |
| Address | 1416 Carolina Court SCHAUMBURG, IL, 60193 | | Interviewed? | Y | |
| Home | | Work | 708-670-2331 | Mobile | Fax |
| Email | | | Participation | Walk Around, Credentials | |
| Name | Ed Mokry | Job Title | Site Manager | Occupation | |
| Address | | | Interviewed? | Y | |
| Home | | Work | | Mobile | Fax |
| Email | | | Participation | Walk Around, Citation Mailed, Credentials, Closing Conference, Opening Conference | |
| Name | Chris Weber | Job Title | EH & S Manager | Occupation | |
| Address | | | Interviewed? | Y | |
| Home | | Work | | Mobile | Fax |
| Email | | | Participation | Walk Around, Credentials, Closing Conference, Opening Conference | |
| Name | Dave Gaertner | Job Title | EH&S Coordinator | Occupation | |
| Address | | | Interviewed? | Y | |
| Home | | Work | | Mobile | Fax |
| Email | | | Participation | Walk Around, Credentials | |
| Name | Hanna Mayer | Job Title | HR Manager | Occupation | |
| Address | | | Interviewed? | Y | |
| Home | | Work | | Mobile | Fax |

Page 3
International Paper Company

Fri Aug 05, 2016 21:26:37 PM
Inspection Nr. 1124627

| Email | | Participation | Credentials, Opening Conference |
|---|---|---|---|

### Employees Contacted

| Name | |
|---|---|
| Address | |
| Home | |
| Email | |

| Name | |
|---|---|
| Address | |
| Home | |
| Email | |

*#7C*

| Name | |
|---|---|
| Address | |
| Home | |
| Email | | Participation |

### Penalty Adjustment Factors

| Size Reduction | 0% | Good Faith Reduction | 0% | History Reduction | 10% PENALTY INCREASE |
|---|---|---|---|---|---|
| Size Justification | Employer has 20,000 employees in the U.S. at multiple facilities. | Good Faith Justification | Employer has safety and health program with major deficiencies in machine guarding, contributing to serious injury on 2-8-16. | History Justification | Employer has received high gravity serious violations in past 5 years. |

| CSHO Signature | *#7C* | | *August 5, 2016* |
|---|---|---|---|

UnProgrammed Activity

**OIS**

## FINAL

Activity Number: 1060770    Establishment/DBA International Paper    RID: 0521400
     Name: Company

**Establishment Information**

**Establishment Information**

Establishment International Paper
Name: Company

Ownership: Private Sector

Type of Business: Corporation

Establishment DBA:

Establishment ID: 1026943168

Primary NAICS:

Injury Blocks

**Business Address**

Street Address 1: 3920 Enterprise Ct.

Street Address 2:

Country:

State:

City:

County:

Zip Code: 60504

E-mail Address:

Phone Number: 6304239790

Fax: 901-473-5292

**Mailing Address**

Street Address 1: 3920 Enterprise Ct.

Street Address 2:

Country:

State:

City:

County:

Zip Code: 60504

**Site Address**

Street Address 1: 3920 Enterprise Ct.

Street Address 2:

City: AURORA

State: ILLINOIS

County: KANE

Zip Code: 60504

Phone Number: 630-423-9790

Phone Number Extn:

Fax: 901-473-5292

Number of
Employees:

**Management/Business Type**

Management Official First Ed
Name:

Type of Business:

Official Phone: 630-423-9790

Official Phone Extension:

Last Name: Mokry

Primary NAICS: 322299 - All Other Converted Paper Product
Manufacturing

Type of Site
Activity:

**Receipt Information**

**Receipt Information**

Received By: ___

Receipt 02/08/2016
Date:

Receipt Phone
Type:

Receipt 03:50 PM
Time:

Activity Referral
Type:

Formality:

**Complaint / Referral - Subject / Severity**

Discrimination: No

**Safety**

Imminent No
Danger:

Serious: Yes

Other: No

**Health**

Imminent No
Danger:

Serious: No

Other: No

UnProgrammed Activity                                                    **Page 2 of 3**

Hazard Description And   On or about February 8, 2016 an in-patient hospitalization occurred as an temp worker received a right
Location:   hand injury caused by hand feeding a Texas Flexo Fold Gluer.

No. of Alleged Hazards:                              No. Employees Exposed
                                                    (Removed from Alleged Hazard):

**Source Information**

**Source : 1**

| | | |
|---|---|---|
| Source Type: | Employer/Employer Representative | Phone Number: 6304239790 |
| Prefix: | | Phone Number Extn: |
| First Name: | Ed | Fax Number: 9014735292 |
| Last Name: | Mokry | Reveal Source Name: No |
| Suffix: | | Organization Name: |
| Job Title: | Site Manager | Organization Title: |
| E-mail Address: | | Bought To Attention of: |
| CSHO ID: | | Name Of The Govt Agency: |
| CSHO First Name: | | Street Address 1: |
| CSHO Last Name: | | Street Address 2: |
| CSHO Job Title: | | City: |
| Date Separated: | | State: |
| Relationship: | | Country: UNITED STATES OF AMERICA |
| Other: | | Zip Code: |

**Employer Reported Ref**

Has this happened before?  N                              Is the hazard still present?  N

What was the employee doing just  Hand feeding a Flexo Fold Gluer (Machine)
before the incident occurred?

What Happened?  Right hand got caught in the machine

What was the injury or illness?  Right hand injury

What object or substance  Texas Flexo Fold Gluer
directly harmed the employee?

**Rapid Response Investigation Information**

Corrective Actions:

Corrective Actions Keywords:

Additional Relevant Information:

# Employed in Estab:                              # Controlled by Employer:

Date Employers Response is sufficient to close the Rapid Response Investigation:

Inadequate Employer
Response Description:

**Assign/Transfer Information**

**Assignment**

Assigned CSHO's Login Name                       Assigned Supervisor's Login Name

 #7C                                              #7C

**Additional Fat Cat Information**

**Classification**

| | |
|---|---|
| Classification: | Employer Report Date: |
| No. Hospitalized:  1 | Employer Report Time: |
| No. Unaccounted For: | Event Date: 02/08/2016 |
| No. Fatalities: | Event Time: 07:30 AM |
| No. Non-Hospitalized: | Incident Type: |

**Do Inspection**

Do Inspection?: No                               Explanation:

# UnProgrammed Activity

Reason for No
Inspection:

Injured Employee Information : 1

First Name:

Last Name:  ⫅ 7ᒪ

Age:

Occupation: machine operator

Phone Number:

Location to Which Good Samaritan Hospital in Downers
Injured Employee was Grove
Moved:

Worker's Compensation
Insurance Carrier
(Name & Address):

Street Address 1:          ⫅ 7ᒪ

Street Address 2:

City:

State:

Zip Code:

Country: UNITED STATES OF AMERICA

**Complaint/ Referral Information**

Close  No
Complaint/Referral?:

**Complaint/Referral Action Source : 1**

Action Date: 02/08/2016

Action Type: Valid = Y

**Complaint/Referral Action Source : 2**

Action Date: 02/08/2016

Action Type: Do Inspection = Y

Reason for Inspection: Alleged Disabling Injury or Illness

Inspection priority: High

**Program Information**

**National Emphasis Programs**

AMPUTATE (REDUCING MACHINE HAZARDS LEADING TO AMPUTATIONS)

**Local Emphasis Programs**

**Federal Strategic Initiative :**

AMPUTATIONS

Migrant Farm Worker  No
Camp:

Additional Codes:   Type  Id        Value           Description

 

U.S. Department of Labor - Occupational Safety and Health Administration

## Investigation Summary

| Reporting ID | Investigation Summary Number | UPA Number | Event Date | Event Time | Construction |
|---|---|---|---|---|---|
| 0521400 | 87264 | | 02/08/2016 | 07:00 AM | N |

| Establishment Name | International Paper Company | Doing Business As (DBA) | |
|---|---|---|---|
| Related Inspections | | | |

## Site Information

| Street Address 1: | 3920 Enterprise Ct. | | | | |
|---|---|---|---|---|---|
| Street Address 2: | | | | | |
| County: | KANE | | | | |
| City | AURORA | State | IL | Zip | 60504 |

## Event

| Type of Event | Degloving and crush injury to hand. | | |
|---|---|---|---|
| **Number of Employees** | | | |
| Fatalities | Hospitalized | Non-Hospitalized | Unaccounted |
| 0 | 1 | 0 | 0 |

## Abstract

| | |
|---|---|
| What was employee doing just before incident occurred? | Employee was wiping paperboard dust from the edge of the machine table with a paper towel. |
| What happened? | Employee was feeding cardboard into the feed section of a Flexo-folder-gluer machine. It is unknown if the machine operator stopped the machine temporarily to investigate a product output problem at the end of the line, or if the machine was running in normal production operation. The employee stepped down to the left of the operator station, and picked up a blue paper towel and began to wipe the dust from the edge of the machine table. The machine either started up again or was already running and her right hand was pulled under the fixed barrier guard and into the ingoing nip point between two feed rollers. The employee was able to hit the E-stop button on the control panel to her left to stop the machine. |
| What was the injury or illness? | Crushing of fingers and de-gloving of entire right hand. |
| What was the object or substance that directly harmed the employee? | Two feed rollers on Flexo-folder-gluer machine. |
| Keywords | Machine Guarding,Caught In,Crushing |

| Victim 1 | |
|---|---|
| Injured/Deceased Name | |
| Gender | |
| Age | |
| Victim Injury | Hospitalized |
| Cause | Caught in or between |
| Nature of Injury | Other |

| Next of Kin 1 | | | | | |
|---|---|---|---|---|---|
| Next of Kin Name | | | | | |
| Relationship to Deceased | | | | | |
| Mailing Address | | | | | |
| Mailing City | | State | | Zip Code | |

## SAFETY NARRATIVE

**Company Name:** International Paper Co.     **Inspection #:** 513679     **CSHO:**

**Coverage Information:** Company is a cardboard box manufacturer. This establishment is referred to as the Aurora Sheet Plant. The plant receives sheets of cardboard and converts them into boxes (printing, cutting, folding, gluing, strapping & shipping). Most products are distributed within a 1 hour travel radius of the Aurora establishment. The plant also provides help with small LTL trial orders that are distributed all over the country. International Paper's Global Headquarters are located in Memphis, TN. International Paper is a publicly traded Fortune 200 Company and has no parent company. It is the world's largest producer of paper goods.

**Nature and Scope:** Partial scope safety referral inspection in response to employer's self-report of employee injury on February 8, 2016 resulting in hospitalization after an employee's hand was caught in the ingoing nip point between front feed rollers on a flexo-folder-gluer machine. The employee was a temporary agency employee placed by Manpower, working under the day-to-day supervision of International Paper.

<u>Accident Description:</u>
On the morning of February 8, 2016, at approximately 7:00 a.m., a temporary agency employee working as a flexo-folder-gluer machine helper was feeding cardboard sheets into the feed section of a Tecasa flexo-folder-gluer machine. It is unclear as to whether the machine operator stopped the machine temporarily to investigate a product output problem at the end of the line, or if the machine was in normal operating mode. The machine helper stepped down to the left of the center feed station area, and picked up a blue paper towel supplied in the work area near the machines and began to wipe the dust from the edge of the machine table, approximately 1.5 to 2' from the fixed barrier guard in front of the feed rollers. The machine either re-started or was running and 7ᴄ right hand was pulled under the fixed barrier guard and into the ingoing nip point between the two feed rollers. The nip point was even with the machine table height, with one roller just below table height and the other just above table height.

The employee was wearing rubberized cut-resistant work gloves at the time of the accident, as required by the employer, and 7ᴄ hand was pulled into the rollers almost to the wrist joint. The employee was able to hit the red E-stop button on the control panel directly to 7ᴄ left with left hand, which stopped the machine. The employee was forced to 7ᴄ knees in front of the machine due to the manner in which 7ᴄ was caught. There were no direct witnesses, and no other employees were working at the front of the machine with 7ᴄ at the time of the accident.

An employee walking by saw the situation and notified others. The maintenance technician for the plant responded and 911 was called. The maintenance technician worked with Fire Dept. personnel and paramedic responders in an effort to find a way to extricate the employee's hand. The machine was opened on the back side, and the employee's right hand could be seen caught between the rollers. Difficulties were encountered with disassembling the machine because of the employee's physical position directly in front of the barrier guard on the front of the machine. In order to access or remove the rollers where 7ᴄ hand was caught, this guard would need to be removed. It was not possible to remove this part of the machine while the employee was kneeling in front of it. Disassembling the machine from the back side of the rollers would

1

have taken longer than medically advisable for extricating the employee. The rollers on the machine were not designed to work in reverse. Fire dept. personnel had limited success in using a hydraulic jaw-like tool to force the front guard of the machine up in an attempt to allow enough room to remove his hand. Paramedics ultimately extricated the employee's hand as directed by a trauma surgeon at Good Samaritan Hospital who was providing medical guidance by phone. The injured employee was flown by helicopter to Good Samaritan Hospital in Downers Grove, IL, a trauma center. The employee sustained severe crushing and de-gloving injuries to the right hand and fingers, resulting in potential permanent disability.

**Opening Conference Notes:**

        arrived at the facility on February 11, 2016.        presented credentials and explained purpose and scope of inspection. An opening conference was held with Ed Mokry, Site Manager and Hannah Mayer, HR Generalist. Both employer reps were familiar with the injury incident, and both arrived on site on the day of the accident after emergency responders were on site and both observed the employee caught in the machine. Mr. Mokry had personally reported the injury to OSHA by phone. Environmental Health & Safety Manager Chris Weber was en route from Westmont, IL and arrived at the facility and joined the opening conference prior to the walkaround. The employer purchased the Aurora Sheet Plant facility from Cano Container on 9/4/2015, approximately 5 months prior to the accident on 2/8/2016. Cano Container still has reps on site for sales, but they were independent of International Paper and leased their office space. I Paper owned the 50" wide Tecasa Flexo-Folder-Gluer involved in the 2/8/2016 accident.        requested information from the employer and it was agreed that a formal document request would be submitted by OSHA. Mr. Weber stated in the opening conference that the height of the guard opening was no more than ¼" to 1/8" and that they did not know how the employee's hand got into the space. Mr. Weber and Mr. Mokry both stated that they did not know what the employee was actually doing at the time of the accident. In response to        questions, they responded that they did not know yet know how to prevent the accident and had not reached out to the machine manufacturer, Tecasa. Mr. Weber informed        that additional guarding for the machine was on order and showed        samples of accordion guarding. Mr. Weber stated that the additional guarding was being added to bring the machine up to I Paper's standards. He denied that there was a problem with the guarding at the time of the accident. Mr. Mokry and Mr. Weber agreed to allow the inspection to proceed.

**Inspection/Walkaround Information:**

On February 11, 2016,        conducted walkaround of the machine area with Chris Weber and Ed Mokry. The Tecasa machine was not running at the time that        viewed it. A temporary expanded metal guard had been affixed over the opening in the barrier guard to the left of the feed station, where the employee's hand was caught. Mr. Weber stated that fire dept. personnel had forced the guard open further than usual and the machine was put back in operation that day. Since the left side of the guard where the employee was caught had been altered since the time of accident,        took measurements on the right side of the guard, which appeared to be in accordance with OSHA's .217 Table O-10. When measured with a guard opening scale ("gotcha" stick) and also a folding ruler, the guard did not allow the guard opening scale to advance beneath the opening beyond ¼" high, nor did it allow        folding ruler, which is 5/8" high when turned sideways, to enter beneath the guard. EH&S Manager Chris Weber told        during walkaround that the guard on the left side of the machine (where

employee's hand was caught) was at the same height as it was on the right side of the machine, where          measured during the walkaround.

On June 21, 2016,          interviewed fire and paramedic personnel involved in the extrication. Information obtained during the fire dept. personnel interviews supported that the opening where the employee's hand was caught was larger than the 1/4 to 1/8" inch as stated by Mr. Weber during the 2/11/2016 walkaround.

On June 24, 2016,          returned to site with          .. An opening discussion was held with EHS & Safety Coordinator Dave Gaertner, Brian Totzke, Plant Safety Coordinator and Mr. Mokry, Site Manager. Mr. Gaertner stated that he had assessed the guard on the Tecasa flexo-folder-gluer machine and all other machines with tape measurements after Internatinal Paper purchased the building from Cano Container. "I took a tape measurement of the front opening, but I didn't write it down. I did it for all of the machines."

A second and third walkaround was then conducted by          and          on June 24, 2016 with EH&S Coordinator Dave Gaertner and Plant Safety Coordinator Brian Totzke. The fixed barrier guard on the front of the machine had been sent out for repairs and was reinstalled on the machine. The maintenance technician confirmed that the barrier guard was installed in the same position and height above the machine table as it was at the time of the accident on 2/8/2016. Measurements were taken by          of the opening in the guard on the left side of the machine where the employee's hand was caught. The guard allowed 5/8" high folding ruler (turned sideways) to freely advance under the guard into the ingoing nip point a distance of 1.5" from the guard opening. The OSHA guard opening scale tool ("gotcha" stick), was not as effective in assessing distance from the guard opening to the ingoing nip point, due to the curved shape of the rollers.          folding ruler clearly showed that the height of the guard opening was too great for the distance to the ingoing nip and would not prevent a hand or fingers from entering the danger zone (see photos). Mr. Gaertner was informed of this. The company had also installed supplemental accordion guards in front of the guard opening which were affixed with magnets. Mr. Gaertner was informed that these guards would need to be permanently affixed to the machine to be considered part of a secondary guarding system, the primary guard being the fixed barrier guard, the opening of which was too large. Lastly, Mr. Gaertner was informed that the ends of a rotating shaft at the front feed roller section of the machine needed to be guarded (this condition was not related to the accident).

The following facts support          conclusion that the fixed barrier guard on the left front section of the Tecasa flexo-folder-gluer did not prevent access to the ingoing nip point between the feed rolls on February 8, 2016 and June 24, 2016.

- On 2/8/2016, an employee's hand was pulled into the machine up to the wrist through the guard opening
- On 6/21/2016, fire dept. personnel provided evidence that the guard opening was greater than 1/8"-1/4" as stated by Chris Weber on 2/11/2016.
- On 6/24/2016,          measured the left side of the fixed barrier guard, which was reinstalled in its original location, and found the opening large enough to allow fingers or a hand into the ingoing nip point.

3

- The employer's representatives did not record, recall or produce any photos or other evidence obtained prior to or during the 2/8/2016 accident of the size of the guard opening on the left side of the machine where the employee's hand was caught,

**\*\*\* Serious citation 1910.212(a)(1) was issued for inadequate guarding of the ingoing nip point between the feed rolls on the front of the machine (related to 2/8/16 accident).**

**\*\*\* Serious citation 1910.219(c)(2)(ii) was issued for exposed, unguarded ends of rotating shaft for the feed rollers (not related to 2/8/16 accident).**

**Closing Conference Notes:**
A closing phone conference was held by _____ with Edward Mokry, Site Manager and Chris Weber, Safety Manager on August 1, 2016 at 10:00 a.m. The employer was informed that two serious citations will be issued with 30 day abatements.

In response to Mr. Weber's inquiry, ___ ___ confirmed that the use of accordion guards in front of the fixed barrier guard would not be acceptable abatement since the barrier guard opening was greater than 5/8" with a distance to the nip point of 1.5". He confirmed that he understood the item was not yet abated.

Citations should be mailed to the attention of Ed Mokry, Site Manager. _____ advised that if the company wished to come in for an informal conference, that Mr. Weber could be conference in by phone if desired.

The company is very interested in knowing what the injure employee was doing at the time of the accident. _____ responded that she had interviewed the employee, and that she was engaged in what we considered to be normal duties, nothing very unusual. _____ advised that due to confidentiality issues, she would not discuss the content of the employee's interview, and this issue would be discussed with the Area Director during an informal conference.

*# 7C*

*Aug. 5, 2016*
Date

4